UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JOHN J. HURRY, an individual; and ALPINE SECURITIES CORPORATION, a Utah corporation,<br><br>Plaintiffs,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC., a Delaware corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [19] DEFENDANT'S MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00970-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Defendant Financial Industry Regulatory Authority, Inc.'s ("FINRA") Motion to Dismiss.[1] FINRA moves to dismiss all claims asserted against it by Plaintiffs John J. Hurry, and Alpine Securities Corporation ("Alpine") (collectively, "Plaintiffs") for lack of subject matter jurisdiction and, alternatively, for failure to state a claim. Because this court lacks subject matter jurisdiction, FINRA's motion is granted.

## BACKGROUND

Alpine is a registered broker-dealer, clearing firm, and member of FINRA.[2] Mr. Hurry is a partial owner of Alpine who holds various licenses in the securities industry and has been registered as an associated person with Alpine since 2024.[3] FINRA is a national securities association authorized by the Securities Exchange Act of 1934 ("Exchange Act" or the "Act")[4]

---

[1] Def.'s Mot. to Dismiss ("Mot."), ECF No. 19, filed Jan. 30, 2026.
[2] Pls.' Compl. ("Compl.") ¶ 13, ECF No. 2, filed Oct. 29, 2025.
[3] *Id.* ¶ 14.
[4] *See* 15 U.S.C. § 78a *et seq.*

to create rules and regulations "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade . . . and, in general, to protect investors and the public interest."[5] All rules promulgated by FINRA must be approved by the SEC and must be consistent with the Exchange Act.[6] Under the Act, member firms can appeal a FINRA Hearing Panel decision first to the National Adjudicatory Council ("NAC"), which may modify, reverse, or affirm the decision, and then to the SEC for review.[7] If the SEC affirms the decision, a member firm may appeal to the appropriate circuit court of appeals.[8] This review framework applies to FINRA membership determinations.[9]

In 2013, Alpine executed an updated membership agreement ("Membership Agreement") that requires FINRA approval for changes in top personnel, such as the Financial and Operations Principal ("FINOP").[10] The Membership Agreement contains a provision that requires Alpine to "file a written notice and application with FINRA at least 30 days prior to effecting a change in ownership or control pursuant to Rule 1017."[11] That rule governs "changes to [a member's] ownership, control, or business operations."[12]

In 2023, FINRA objected to Alpine's proposal to appoint Mr. Hurry as its FINOP because of its concerns about Mr. Hurry's regulatory history, experience, and qualifications.[13] In

---

[5] *Id.* § 78o-3(b)(6). *See generally* FINRA Rules 9210–9370, https://www.finra.org/rules-guidance/rulebooks/finra-rules/9000 [https://perma.cc/7R6F-CPEJ].

[6] 15 U.S.C. § 78o-3(b)(6); *Id.* § 78s(b)(2)(C).

[7] *Id.* § 78s(d).

[8] *Id.* § 78y(b).

[9] *See* FINRA Rules 1014, 1017.

[10] Compl. ¶¶ 38, 42.

[11] Alpine's Membership Agreement 1 (Ex. 2), ECF No. 19-2, filed Jan. 30, 2026.

[12] FINRA Rule 1017(b)(2); *Id.* 1014(d)(2); *Id.* 1017(a)(5).

[13] Compl. ¶¶ 66–67.

response, Plaintiffs filed this action rather than follow the Rule 1017 process to challenge FINRA's objection to Mr. Hurry's appointment ("Objection").[14]

### STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction.[15] "Subject matter jurisdiction defines the court's authority to hear a given type of case" and "represents the extent to which a court can rule on the conduct of persons or status of things."[16] Because "[f]ederal courts are courts of limited jurisdiction," it is "presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[17]

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action that fails "to state a claim upon which relief can be granted."[18] "Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to the plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[19] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally

---

[14] *See generally* Compl. Plaintiffs and FINRA have been involved in previous legal disputes, which Plaintiffs argue are relevant, yet none of the decisions issued from them are binding on this court or entirely on point. *See, e.g., In re Scottsdale Cap. Advisors Corp., et al.*, SEC Release No. 93052, 2021 WL 4242630 (Sept. 17, 2021) (involving Mr. Hurry, not Alpine); *Alpine Secs. Corp. v. Fin. Indus. Regulatory. Auth.*, No. 2:20-cv-00794, 2021 WL 4060943 (D. Utah Sept. 7, 2021); *Alpine Secs. Corp. v. Fin. Indus. Regulatory. Auth.*, 121 F.4th 1314 (D.D.C. 2024).
[15] Fed. R. Civ. P. 12(b)(1).
[16] *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1092–93 (10th Cir. 2017) (internal quotation marks and citations omitted).
[17] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).
[18] Fed. R. Civ. P. 12(b)(6).
[19] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019)).

construe the pleadings."[20] However, a "complaint cannot rely on labels or conclusory allegations —a 'formulaic recitation of the elements of a cause of action will not do.'"[21] Instead, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[22]

## DISCUSSION

Plaintiffs raise three claims that FINRA has moved to dismiss. Mr. Hurry alleges that FINRA's Objection violates his Fifth Amendment due process rights, Utah's constitutional right to employment (under Article XII, Section 19), and the implied covenant of good faith and fair dealing.[23] Because all three claims challenge a membership determination by FINRA, the court first addresses whether it has subject matter jurisdiction over the claims.

## I.      Subject Matter Jurisdiction

FINRA argues that the Exchange Act divests this court of jurisdiction over Plaintiffs' claims because the Act provides exclusive review for disputes over a proposed personnel change.[24] "A special statutory review scheme," the Supreme Court has explained, "may preclude district courts from exercising jurisdiction over challenges to federal agency action."[25] To determine whether a statutory scheme "divests district courts of their ordinary jurisdiction," a court considers three factors first described by the Supreme Court in *Thunder Basin Coal*

---

[20] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1131 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonald*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).
[21] *Greer v. Moon*, 83 F.4th 1283, 1292 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 2521 (2024) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).
[22] *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009).
[23] Pls.' Compl. ¶¶ 85–116, ECF No. 2, filed Oct. 29, 2025.
[24] Mot. 9; Def.'s Reply in Support of Motion to Dismiss ("Reply") 15, ECF No. 30, filed Apr. 24, 2026.
[25] *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023).

*Company v. Reich*: "First, could precluding district court jurisdiction 'foreclose all meaningful judicial review' of the claim? Next, is the claim 'wholly collateral to [the] statute's review provisions? And last, is the claim 'outside the agency's expertise'?"[26] These considerations are designed to help courts determine "whether the particular claims brought were 'of the type Congress intended to be reviewed within this statutory structure.'"[27] The court considers each factor in turn.

### A.    Meaningful review

Plaintiffs argue that FINRA has prevented meaningful review under the Act's scheme by refusing to enter a final decision on the merits that may then be reviewed by the SEC and, if needed, by a court of appeals under Section 78s(d).[28] In response, FINRA argues that Plaintiffs' appeal was not reviewed because it was procedurally improper and that Rule 1017 provides a straightforward mechanism for reviewing its objection to Mr. Hurry's appointment as Alpine's FINOP.[29]

"Review of agency action in a court of appeals can alone 'meaningfully address[]' a party's claims."[30] However, an exclusive statutory review scheme "does not necessarily extend to every claim concerning agency action."[31] Plaintiffs rely on *Axon Enterprises v. Federal Trade Commission* and *Free Enterprise Fund v. PCAOB*, in which the Supreme Court concluded that the claims at issue could not receive "meaningful judicial review" through the Exchange Act.[32]

---

[26] *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185–86 (2023) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994)).

[27] *Id.* at 186 (quoting *Thunder Basin*, 510 U.S. at 208).

[28] Pls.' Opp'n to Def.'s Motion to Dismiss ("Opp'n") 16, ECF No. 26, filed Mar. 27, 2026.

[29] Reply 1.

[30] *Axon*, 598 U.S. at 190 (quoting *Thunder Basin*, 510 U.S. at 215).

[31] *Id.* at 185.

[32] *Id.* at 195–96; *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 491 (2010).

Both cases analyzed claims that challenged the constitutionality of the agency's structure or existence.[33] In *Axon*, the Supreme Court framed its analysis by deciding "whether the cases before us are more like *Thunder Basin* and *Elgin*[34] or more like *Free Enterprise Fund*."[35] The distinction mattered because the claims in *Thunder Basin* and *Elgin* involved specific action— "fining a company (*Thunder Basin*) or firing an employee (*Elgin*)"—whereas the claim in *Free Enterprise Fund* "challenged the very existence of [the] agency."[36]

Here, Plaintiffs' claims stand in contrast to those in *Axon* and *Free Enterprise Fund* because they challenge specific action by FINRA, rather than its general authority or structure. Specifically, Plaintiffs disagree with FINRA's objection to appoint Mr. Hurry as Alpine's FINOP. A party may challenge such a decision through the process outlined in Rule 1017, which a party initiates by filing a Continuing Membership Application ("CMA").[37] The CMA is then reviewed by FINRA, and its decision may be appealed to the NAC, the SEC, and ultimately the appropriate United States Court of Appeals.[38] Plaintiffs argue that a CMA process is insufficient because they prefer to directly challenge FINRA's allegedly baseless refusal of Mr. Hurry as Alpine's FINOP rather than amend its Membership Agreement.[39] Yet this argument is unavailing because the Rule 1017 process allows Plaintiffs to present evidence about Mr. Hurry's qualifications and modify the Membership Agreement to reflect their request to have Mr. Hurry serve as FINOP, which is the relief they seek.[40] Moreover, the relevant inquiry under

---

[33] *See Axon*, 598 U.S. at 191; *Free Enterprise Fund*, 561 U.S. at 490.
[34] *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22 (2012). *See infra* C. for further discussion of the case.
[35] *Axon*, 598 U.S. at 188.
[36] *Id.* at 189.
[37] *See* FINRA Rule 1017.
[38] *See id.*
[39] Opp'n 18.
[40] *See* FINRA Rule 1017(b)(2).

this factor is not whether a party's preferred review is available, but whether "meaningful" review is.[41] Thus, Plaintiffs have an opportunity for meaningful judicial review of their claims within the Exchange Act's scheme under FINRA Rule 1017.[42] Accordingly, the first *Thunder Basin* factor favors dismissal for lack of jurisdiction.

### B.  Collateral claims

Next, Plaintiffs argue that any claim based on FINRA's objection "must be collateral" if the NAC lacked the authority to reach the merits of it.[43] FINRA responds with two points. First, it argues that the NAC did not issue a ruling because the appeal was procedurally improper.[44] Second, FINRA argues that Plaintiffs' claims are not collateral to the review scheme because they challenge FINRA's specific application of its rules rather than its general authority.[45]

As described above, the Supreme Court distinguishes between claims that contest an agency's "power to proceed at all" and those that challenge "actions taken in the agency proceedings."[46] The former, like the constitutional structural claims in *Axon* and *Free Enterprise*, are considered "wholly collateral to a statute's review provisions."[47] In contrast, a challenge like the one in *Thunder Basin* that centered on a specific decision made by the regulators is appropriately considered within a scheme's exclusive review.[48] The Supreme Court in *Thunder Basin* held that the Mine Act—which contains "nearly identical judicial-review provisions" as

---

[41] *Axon Enter., Inc.*, 598 U.S. at 188.
[42] FINRA Rule 1017(b)(2).
[43] Opp'n 20.
[44] Mot. 7.
[45] *Id.* 10–11.
[46] *Axon*, 598 U.S. at 192.
[47] *Thunder Basin*, 510 U.S. at 212 (citing *Heckler v. Ringer*, 466 U.S. 602, 618 (1984)) (internal quotation marks omitted).
[48] *Id.* at 207–08.

the Exchange Act—precluded district court jurisdiction where the mine operator had thirty days to challenge the decision before a citation was issued, that challenge could be heard before an administrative law judge and reviewed by the applicable commission, and the decision could then be appealed to the appropriate court of appeals.[49]

Similarly, the Exchange Act expressly requires FINRA to maintain rules governing admission to membership, deny membership to those who do not meet competency, training, or experience-related standards, and ensure a "fair procedure" for membership determinations.[50] As described above, Plaintiffs' claims all challenge a personnel membership restriction, which falls squarely under the statutory review scheme designed to handle this type of dispute.[51] "Claims that arise from actions FINRA took within the administrative enforcement scheme or that seek the same relief the plaintiff could obtain in the agency proceeding are not collateral at all, let alone 'wholly' so."[52] Thus, when claims "are the vehicle by which they seek to reverse" an agency's application of its rules, they are "[f]ar from . . . wholly collateral."[53] Therefore, this factor likewise favors dismissal for lack of jurisdiction.

### C.      SEC's expertise

Third, Alpine argues its breach of contract claim and constitutional claims fall outside the SEC's competence and expertise.[54] FINRA responds that challenges to FINRA's exercise of

---

[49] *See id.*

[50] *See* 15 U.S.C. § 78o-3(b)(3); *Id.* § 78o-3(g)(3)(A); *Id.* § 78o-3(b)(8).

[51] *See, e.g.*, *Heckler*, 466 U.S. at 614 (concluding that despite how plaintiffs described the claims, "at bottom," they were the type that "should be channeled first into the administrative process which Congress has provided for the determination of [such] claims.").

[52] *Scottsdale Cap. Advisors Corp. v. Fin. Indus. Reg. Auth.*, 390 F. Supp. 3d 72, 80 (D. D.C. 2019) (citation omitted).

[53] *Elgin*, 567 U.S. at 22. *See also Heckler*, 466 U.S. at 614 (holding that plaintiffs' claims were not wholly collateral to a statutory scheme of administrative review because they were "an attempt to reverse the agency's decision to deny payment").

[54] Opp'n 22.

regulatory authority are squarely within the expertise of the NAC and the SEC, particularly because the SEC routinely reviews FINRA's authority to assess changes in a member firm's personnel under a FINRA membership agreement.[55] Furthermore, FINRA argues that Alpine's due process claim is inextricably intertwined with powers statutorily assigned to the SEC.[56]

In *Elgin v. Department of Treasury*, the Supreme Court rejected the argument that because constitutional claims fall outside an agency's expertise, Congress did not intend them to be reviewed by agencies.[57] Instead, the *Elgin* court applied the *Thunder Basin* standard and held that even for constitutional challenges, the statutory review scheme at issue was exclusive because it allowed a court of appeals to review the constitutional issues.[58]

In contrast, the Supreme Court in *Axon* concluded that the statutory scheme was not exclusive.[59] The *Axon* court reasoned that its constitutional claims bore little resemblance to the due process claim in *Thunder Basin* and held that a constitutional challenge to the structure of an agency falls outside the statutory review scheme.[60] Thus, the *Axon* court reaffirmed the *Thunder Basin* standard and differentiated due process claims from structural constitutional claims for purposes of jurisdiction.[61]

Here, Plaintiffs' constitutional claims are more akin to those in *Thunder Basin* than to those in *Axon* because they challenge a specific action of FINRA. Furthermore, the due process claim is inextricably connected to FINRA's expertise, but even that were not the case, the claim

---

[55] Mot. 11–12; Reply 5.
[56] Mot. 11–12; Reply 5.
[57] 567 U.S. at 22–23.
[58] *Id.* at 17–23.
[59] 598 U.S. at 195–96.
[60] 598 U.S. at 186–87, 195–96.
[61] *Id.* at 192–96.

may be "meaningfully addressed in the Court of Appeals."[62] Similarly, Plaintiffs' contract claim may also be judicially reviewed in the same manner. Although Plaintiffs label some of their claims as contractual or constitutional, at the heart of each is their dissatisfaction with FINRA's Objection. Therefore, none of the claims qualify as collateral issues that would fall outside the statutory review scheme here.

Having applied the *Thunder Basin* standard, the court determines that it does not have subject matter jurisdiction to evaluate Plaintiffs' claims. First, Rule 1017 provides an opportunity for meaningful review of Mr. Hurry's objection to his appointment as FINROP, and the court of appeals can meaningfully review his due process claims. Second, Plaintiffs' claims are not collateral to the Exchange Act's statutory scheme because they all challenge a membership decision made by FINRA. Third, such decisions fall within the expertise of the SEC. Therefore, Plaintiffs' claims are the type Congress intended to be reviewed within the statutory scheme outlined in the Exchange Act.

## II.    Failure to State a Claim

Alternatively, FINRA argues for dismissal under Rule 12(b)(6) for Plaintiffs' failure to state a claim. Because the court determines it does not have jurisdiction over this matter, however, it cannot address this argument.

## ORDER

Accordingly, the court GRANTS Defendant's Motion to Dismiss for lack of subject matter jurisdiction.[63]

---

[62] *Thunder Basin*, 510 U.S. at 215.
[63] ECF No. 19.

Signed June 8, 2026.

BY THE COURT

David Barlow
United States District Judge